**Alicia LAMB, by her mother, Patricia LAMB, Petitioner,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–493V.

United States Claims Court.

Sept. 23, 1991.

Walter S. Kyle, Boston, Mass., for petitioner.

Frank F. Krider, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for respondent.

ORDER

HARKINS, Senior Judge:

Petitioner, Alicia Lamb, by her mother, Patricia Lamb, seeks review in the United States Claims Court under the National Vaccine Injury Compensation Program (the Program) of a decision dated May 1, 1991, by the Chief Special Master. The Program was established in 1986 as part of the National Childhood Vaccine Injury Act, Pub.L. No. 99–660, Title III, § 311(a), 100 Stat. 3758. In a series of amendments, procedures applicable to the functions of special masters, and review of decisions of special masters, have been changed substantially. Amendments to the Program were made in the *Omnibus Budget Reconciliation Act of 1987* (1987 Amendments), Pub.L. No. 100–203, Title IV, 101 Stat. 1330–222 (Dec. 22, 1987); the Medicare Catastrophic Coverage Act of 1988, Pub.L. No. 100–360, Title IV, 102 Stat. 808 (July 1, 1988); the Omnibus Budget Reconciliation Act of 1989 (1989 Amendments), Pub.L. No. 101–239, Title VI, § 6601, 103 Stat. 2285–94 (Dec. 19, 1989) and the Vaccine and Immunization Amendments of 1990 (1990 Amendments), Pub.L. No. 101–502, § 5, 104 Stat. 1286 (Nov. 3, 1990). Provisions governing the Program are contained in 42 U.S.C.A. §§ 300aa–10 through 300aa–34 (West 1991). For convenience, further reference to the Program in this order will be to the relevant subsection of "42 U.S.C.A. § 300aa–___."

The Chief Special Master dismissed the petition with prejudice pursuant to Section 11(a)(6), which prohibits participation in the Program if a civil action is brought by a petitioner after November 15, 1988. Section 11(a)(6) provides:

> (6) If a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition under subsection (b) of this section for such injury or death.

The facts relevant to this matter are as follows:

—Alicia Lamb was born on March 23, 1985; she received her first DTP vaccination on June 12, 1985, with no adverse reaction. She received a second DTP vaccination on August 9, 1985, after which she suffered a seizure and was hospitalized.

—On October 25, 1988, Patricia Lamb, as parent and natural guardian, authorized a law firm in Philadelphia to investigate a possible claim.

—A complaint signed by a member of the Philadelphia firm as attorney for plaintiff and dated January 17, 1990, was filed in the Court of Common Pleas, Philadelphia County, Pennsylvania. The plaintiffs were: ALICIA ORLANDA LAMB, a minor by her parent and natural guardian, PATRICIA ORLANDA LAMB, and PATRICIA ORLANDA LAMB, in her own right; defendants were: LEDERLE LABORATORIES and THE CITY OF PHILADELPHIA.

—Patricia Lamb discussed the National Childhood Vaccine Act, with the Philadelphia counsel, who by letter dated April 12, 1990, transmitted an authorization for Patricia Lamb to sign and return. Thereafter, the complaint was dismissed.

—The petition for compensation under the Program in this case was filed on June 7, 1990. The petition was signed by Michael R. Hugo, counsel of record for petitioner. Paragraph 10 of the petition states:

> 10. Petitioner has filed no lawsuits or received any judgments or awards or settlements due to Alicia's vaccine related injuries.

—An affidavit by Patricia Lamb was appended as exhibit 1 to the petition. Paragraph 6 of the affidavit states:

> 6. We have filed no lawsuits or collected any settlements or awards for Alicia's vaccine related injuries. Alicia's injuries have lasted for longer than 6 months, and we have spent more than $1,000 in out-of-pocket costs for her vaccine related injuries.

—On September 11, 1990, Michael R. Hugo filed a motion to withdraw as counsel of record. Walter S. Kyle, a member

of the same law firm, entered an appearance as attorney of record.

—On October 10, 1990, the respondent filed its response in accordance with Vaccine Rule 4(b). The report contains the following statement:

The Vaccine Injury Compensation Branch, Department of Health and Human Services, has evaluated the petition and concluded that the petition satisfies the statutory requirements for establishing a presumptively vaccine-related residual seizure disorder as specified in the Vaccine Injury Table.

The report concludes:

Provided that petitioners satisfy the requirement of section 300aa–11(c)(1)(D)(i) of title 42, United States Code, respondent recommends that compensation be awarded to the petitioners in this case in accordance with the terms and under the conditions of the Vaccine Injury Compensation Program.

—After respondent had conceded petitioner's entitlement to compensation, the only question remaining was the appropriate amount of compensation. A life-care plan was prepared for petitioner and preparations were made for witnesses to testify at an evidentiary hearing, scheduled by order to be held on April 25, 1991, in Philadelphia, Pennsylvania. Prior to the beginning of the hearing, the Chief Special Master was informed that a civil suit had been filed in January 1990. Walter S. Kyle had learned for the first time of the lawsuit filed in the Court of Common Pleas in discussions with Patricia Lamb the previous evening.

—Pursuant to RUSCC Appendix J, a motion for review of the May 1, 1991, decision to dismiss was filed on May 31, 1991, and a response in opposition was filed on June 27, 1991.

## DISPOSITION

A special master's decision may not be disturbed by the Claims Court unless the court finds it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. The 1989 Amendments defined the Claims Court function in a review of a special master's decision in Section 12(e)(2), as follows:

(2) Upon the filing of a motion under paragraph (1) with respect to a petition, the United States Claims Court shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

At issue in this case is the meaning of Section 11(a)(6). The decision of the Chief Special Master that Section 11(a)(6) requires dismissal is a conclusion of law. On review, conclusions of law are considered de novo.

The motion for review makes two claims. First, the motion asserts that petitioner was not aware of the existence of the Vaccine Compensation Act because the Secretary of the Department of Health and Human Services had violated his obligation to publicize the Program. Second, the motion claims that, while a complaint may have been "filed" on petitioner's behalf in the state court of Pennsylvania in January of 1990, the filing of that complaint was not equivalent to the "bringing of a civil action." For the reasons that follow, petitioner's contentions are without merit.

The terms of Section 11(a)(6) are not ambiguous. This court has held the language of the section "to be crystal clear." *Greider v. Secretary*, 23 Cl.Ct. 348, 349 (1991); *see also* decision in *Vire v. Secretary*, No. 90–84V (Cl.Ct.Spec.Mstr. Dec. 28, 1990, *aff'd*, May 13, 1991); *Joy v. Secre-*

*tary,* No. 90–694V, 1990 WL 299398 (Cl.Ct. Spec.Mstr. Nov. 16, 1990).

■ The motion for review argues that the Secretary violated the duty to publicize the Vaccine Compensation Act and this failure should estop respondent from asserting a bar to petitioner's claims. An estoppel against the Government may not be asserted by a claimant seeking the payment of money. *OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

The Secretary's responsibility to publicize the Act is found in Section 26(a), which provides:

> Not later than 1 year after the effective date of this subpart, the Secretary shall develop and disseminate vaccine information materials for distribution by health care providers to the legal representatives of any child receiving a vaccine set forth in the Vaccine Injury Table. Such materials shall be published in the Federal Register and may be revised.

Section 26 does not apply to this case. The informational materials required by section 26(a) are to be distributed by the health care providers only after development by the Secretary, and on and after a date to be established by regulation. Section 26(d). Petitioner received the DTP vaccination on August 9, 1985, long before the Secretary's obligation under Section 26 took effect. By the time the complaint was filed in the Court of Common Pleas in January 1990, and the petition was filed in this court on June 7, 1990, counsel should have been aware of the jurisdictional requirements.

■ Petitioner contends that because Philadelphia counsel did not advise her of the availability of the Vaccine Injury Program, somehow that failure becomes the responsibility of the Secretary. The Secretary is not an insurer of petitioner's counsel; if counsel's advice is faulty, the Secretary is not answerable. Whether petitioner was competently advised in bringing the action in the Philadelphia Court of Common Pleas or not, that choice was made with the advice of counsel. That the consequences of that choice now are most unfortunate does not permit a departure by this court from the requirements of Section 11(a)(6).

■ The motion for review argues that the word "bring" in the phrase "bring a civil action" in Section 11(a)(6) is ambiguous. The petitioner argues that, although a complaint was filed in the Court of Common Pleas, the petitioner did not "bring" an action within the meaning of Section 11(a)(6). This argument is not persuasive. The generally accepted rule is that "filing" an action is equivalent to "bringing" an action or to "commencing" an action. *See Greider v. Secretary,* 23 Cl.Ct. at 349–50; *Vire v. Secretary,* No. 90–84V, slip op. at 3; *Joy v. Secretary,* No. 90–694V, slip op. at 2.

At the April 25, 1991, hearing, the Chief Special Master noted that the issue of attorneys' fees remained, and suggested that the parties "see if a settlement on the attorney fee issue is appropriate." Under the Program, attorneys' fees may be allowed in circumstances where there is no award of compensation on the petition. Section 15(e)(1) provides:

> (1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—
>
> > (A) reasonable attorneys' fees, and
> > (B) other costs,
>
> incurred in any proceeding on such petition. If the judgment of the United States Claims Court on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

Vaccine Rule 13 provides that requests for attorneys' fees and costs shall be determined in a subsequent procedure that is considered to be a separate decision.

In the event attorneys' fees should be requested subsequently in this case, the

applicable facts could present substantial issues. RUSCC 11 requires every pleading, motion, or other paper to be signed by the attorney of record. The rule also provides that the signature of an attorney or party constitutes a certificate that (1) the attorney or party has read the pleading, motion, or other paper, (2) to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law, and (3) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase costs.

RUSCC 11 is patterned on Rule 11 of the Federal Rules of Civil Procedure (FRCP). Amendment of FRCP in 1983 expanded significantly the responsibility imposed on attorneys when signing pleadings or motions. *Coburn Optical Industries, Inc. v. Cilco, Inc.*, 610 F.Supp. 656, 658 (M.D.N.C.1985). The pre–1983 rule required a showing of bad faith before imposition of any sanctions would be permitted. This bad faith requirement was eliminated. The 1983 amendment imposed an affirmative prefiling obligation on counsel to inquire as to the applicable facts and law.

Paragraph 10 of the petition in this case raises the issue of whether there was a lack of reasonable inquiry by Michael R. Hugo, then attorney of record, as to jurisdictional facts. During the period September 11, 1990, to April 25, 1991, when Walter S. Kyle was attorney of record in the preparation for the evidentiary hearing, there is an issue as to whether a failure to make inquiry as to jurisdictional facts until the eve of the hearing falls below the standard established in RUSCC 11.

## CONCLUSION

On the basis of the foregoing, petitioner's objections to the decision of the Chief Special Master are rejected. The Chief Special Master's conclusion of law with respect to Section 11(a)(6) that dismissal is required is upheld. The Clerk is directed to dismiss the petition in accordance with the decision of the Chief Special Master.